UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY


FARM FAMILY CASUALTY INSURANCE COMPANY,

                    Plaintiff,


v.                                                     CIVIL ACTION NO.  5:19-cv-00892


JOHN K. ELWOOD, a/k/a JACK ELWOOD,
BETTY ELWOOD, JOHN KEVIN ELWOOD,
STEPHEN LEE DiBLASI, DEBORAH GRACE
ELLIOT-SMITH, RUTH EUGENIA WHITNER
LAURA ANN DINERT, NANCY SUE ELWOOD
EDWARD J. SEA, Personal Representative of
Tyrone N. Sea and Administrator of his Estate,
EDWARD J. SEA, Personal Representative of
Andromena K. Kesner and Administrator of her Estate,
EDWARD J. SEA AND RACHEL KESNER, individually
And as guardians and next friends of J.K., a minor,

                    Defendants.


## MEMORANDUM OPINION AND ORDER

Pending are Plaintiff Farm Family Casualty Insurance Company's ("FFCIC")

Motion for Summary Judgment [Doc. 15] and Defendants Edward J. Sea and Rachel Kesner's[1]

(collectively "Defendants") Motion for Summary Judgment [Doc. 17]. The matters have been fully

briefed and are ready for adjudication.

---

[1] Sea and Kesner appear individually and as guardians and next friends of J.K., a minor, and Sea appears in his representative capacity as the duly appointed personal representative of his two children, Tyrone N. Sea and Andromeda K. Kesner, and the administrator of their Estates.

**I.**

This declaratory judgment action involves a May 11, 2019, house fire at 7th Avenue in Hinton. [Docs. 18 at 2, 19 at 1]. Two of Edward J. Sea and Rachel Kesner's children died in the fire. Mr. Sea and another child received burns. [*Id.*]. Three liability insurance policies putatively cover the house, all issued by FFCIC. [Docs. 18 at 3–4, 19 at 2]. Only two of the policies are here at issue.

The first policy is a Special Farm Package 10 Policy ("SFP Policy"), with limits of $2 million in the aggregate and $1 million per occurrence. [Docs. 18 at 3, 19 at 2]. The second insurance policy is a Commercial Policy, with limits of $1 million in the aggregate and $1 million per occurrence. [Docs. 18 at 4, 19 at 2]. The Commercial Policy also contains an anti-stacking endorsement which provides as follows:

> The following condition is added to SECTION IV CONDITIONS OF THE:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART; and
> LIQUOR LIABILITY COVERAGE PART
>
> Two or More Coverage Forms of Policies Issued By Us
> If any "occurrence" or offense covered under this policy is also covered in whole or in part under any other coverage form of policy issued to you by us or any of our affiliates including but not limited to prior policies issued to you by us or any of our affiliates, the total limit of the companies' liability under all such coverage forms and policies covering the "occurrence" or offense, combined, is the single highest applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us or any of our affiliates as insurance that specifically applies in excess of this insurance.
>
> All other provisions of the policy remain unchanged.

[Doc. 1-10 at 20 (capitalization in original)]. FFCIC and Defendants agree that whether the anti-stacking endorsement applies is a question of law involving no contested issues of material fact. [Docs. 13, 14].

FFCIC and Defendants moved for summary judgment on July 16, 2020. FFCIC offers three contentions. First, it asserts the anti-stacking endorsements are valid and enforceable. [Doc. 16 at 5–6 (citing *Gov't Employees Ins. Co. v. Sayre*, 239 W. Va. 300, 302–303, 800 S.E.2d 886, 888–89 (2017) (holding anti-stacking language valid in underinsured motorist context))]. Second, FFCIC claims the anti-stacking endorsement is clear and unambiguous and applies here. [*Id.* at 8]. Third, it notes that numerous courts have upheld anti-stacking language. [*Id.* at 9–11].

Defendants respond that policy provisions are only enforceable when not contrary to a statute, regulation, or public policy. [Doc. 20]. The Supreme Court of Appeals of West Virginia has held that insurance policies, as contracts of adhesion, must be scrutinized to ensure that both parties receive the benefit of the bargained-for exchange. [*Id.* at 6–7]. Defendants claim that the only appropriate cost of a policy providing no additional coverage would be nothing. [*Id.* at 15]. Defendants also assert that the underinsured motorist coverage cases cited by FFCIC are inapplicable here. [*Id.* at 7–8]. They additionally contend that some of the underinsured motorist cases are "wrongly decided" and "clearly against public policy." [*Id.* at 11].

In its amended reply, FFCIC claims there is no statute, regulation, or public policy which contradicts the anti-stacking endorsement. [Doc. 28 at 3]. FFCIC notes the Supreme Court of Appeals has concluded that anti-stacking language in liability policies is not contrary to law. [*Id.* at 4 (citing *State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 565, 396 S.E.2d 737, 746 (1990))]. FFCIC also claims that second guessing the value obtained though the Commercial Policy is inappropriate inasmuch as insurance is purchased for security and peace of mind and not financial gain. [*Id.* at 5]. Furthermore, FFCIC claims that the SFP Policy and the Commercial Policy are complimentary; although both policies cover three of the same properties, including the property in this case, each policy covers different additional properties. [*Id.* at 6].

3

In its cross-motion for summary judgment, Defendants claim that the anti-stacking endorsement is ambiguous and in violation of West Virginia public policy. [Doc. 18]. Based upon their assertion that the anti-stacking endorsement is an amendment to the Commercial Policy, they additionally contend that an ambiguity results when reading the policy as a whole. [*Id.* at 16 (referencing provisions in Doc. 1-10 at 2)]. Defendants also claim that inasmuch as FFCIC failed to provide a discount for the Commercial Policy, the exclusion of coverage is inconsistent with the premium charged. [Doc. 18 at 17–18]. If true, this would violate West Virginia public policy as a premium would have been paid for no additional coverage. [*Id.* at 18–19]. Finally, Defendants assert that "stacking" is not at issue here as there are two different policies covering the same property for the same risk at the same time. [*See id.* at 10–11 (admitting there is no state case providing direct guidance but analogizing from underinsured motorist cases)].

In its amended response,[2] FFCIC asserts that the plain language of the anti-stacking endorsement controls regardless of whether Defendants actually aim to "stack" coverage. [Doc. 29-1 at 4–5]. FFCIC also argues that the contract, even read in its entirety, lacks any ambiguity. [*Id.* at 10–11]. Finally, FFCIC claims the lack of a discounted premium does not bar stacking, as the policies do not only cover identical properties or contain identical coverages. [*Id.* at 12–13].

In reply, Defendants reiterate that the anti-stacking endorsement is irrelevant as there are two policies for which separate premiums were paid. [Doc. 22 at 2]. Defendants then reassert that a policy which provides no additional coverage yet has a non-zero cost violates public policy. [*Id.* at 6]. Defendants then claim that an ambiguity arises because other insurance language conflicts with the anti-stacking endorsement. [*Id.* at 7–8]

---

[2] On August 20, 2020, FFCIC filed a Motion for Leave to File Amended/Modified Response to Defendants' Motion for Summary Judgment to remove an inadvertently included argument. The motion is **GRANTED** as unopposed. **[Doc. 29]**.

## II.

### A.     Governing Standards

Title 28 U.S.C. § 2201(a) provides for the institution of declaratory judgment actions in federal court:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Federal courts are generally obliged "to insure that, in all cases where a federal court is exercising jurisdiction solely because of . . . diversity . . . , the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal

5

quotation marks omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

When the principles of summary judgment are applied to contract interpretation, "[o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence." *W.C. English, Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 404 (4th Cir. 2019) (quoting *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 247 (4th Cir. 1992)). "If a court properly determines that the contract is unambiguous on the dispositive issues, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *United States v. Turner Construction Co.*, 946 F.3d 201, 206 (4th Cir. 2019) (quoting *World-Wide Rights*, 955 F.2d at 245). On the other hand, where a court deems the contract ambiguous, it may "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis." *Washington Metro. Area Transit Auth. v. Potomac Inv. Prop., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (citing *Goodman v. Resol. Trust Corp.*, 7 F.3d

1123, 1126 (4th Cir. 1993)). However, if such extrinsic evidence "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id*.

In West Virginia, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Westfield Ins. Co. v. Matulis*, 421 F. Supp. 3d 331, 339 (S.D. W. Va. 2019) (alteration in original, internal quotations omitted) (citing *Tennant v. Smallwood*, 211 W. Va. 703, 706–07, 568 S.E.2d 10, 13–14 (2002)). "[T]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination." *First Mercury Insurance Co., Inc. v. Russell*, 239 W. Va. 773, 777, 806 S.E.2d 429, 433 (2017) (quoting *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 220, 517 S.E.2d 313, 317 (1999)). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Witt v. Sutton*, 229 W. Va. 26, 30, 725 S.E.2d 195, 199 (2011) (quoting *Christopher v. U.S. Life Ins. Co. in City of New York*, 145 W. Va. 707, 707, 116 S.E.2d 864, 864 (1960)). "When reasonable people can differ about the meaning of an insurance contract, the contract is ambiguous, and all ambiguities will be resolved in favor of the insured." *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 241 W. Va. 335, 340, 825 S.E.2d 95, 100 (2019) (quoting *D'Annunzio v. Sec.-Connecticut Life Ins. Co.*, 186 W. Va. 39, 41, 410 S.E.2d 275, 277 (1991)). In West Virginia, courts must apply the unambiguous terms of an insurance policy "where such provisions are not contrary to a statute, regulation, or public policy." *Jenkins v. City of Elkins*, 230 W. Va. 335, 341, S.E.2d 1, 7 (2012) (quoting *Shamblin v. Nationwide Mutual Ins. Co.*, 175 W. Va 337, 341, 332 S.E.2d 639, 642 (1985)).

The Supreme Court of Appeals' "most basic and preeminent concern . . . is that

insurance consumers and insurance purveyors alike receive the benefit of their bargained for exchange." *Findley v. State Farm Mut. Auto Ins. Co.*, 213 W. Va. 80, 97 n.28, 576 S.E.2d 807, 824 n.28 (2002) (referencing W. Va. Code § 33-6-9). Generally, "antistacking language in the case of *liability* insurance coverage 'does not violate any applicable insurance statute or regulation[.]'" *Payne v. Weston*, 195 W. Va. 502, 508, 466 S.E.2d 161, 167 (1995) (emphasis, alteration, and internal quotations in original). Respecting underinsured motorist coverage, however, the Supreme Court has on occasion concluded that antistacking language is void without an appropriate premium discount. *See State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 565, 396 S.E.2d 737, 746 (1990) (finding antistacking language void for public policy arising from motor vehicle insurance statute).

### B.      Analysis

The initial question is whether the Commercial Policy anti-stacking endorsement is unambiguous. Defendants claim that the anti-stacking endorsement, read in context with the "other insurance" provisions of the Commercial Policy, creates an ambiguity. [Doc. 18 at 16]. They claim the ambiguity occurs because the "other insurance" describes how the policy will pay if another insurance policy applies, whereas the anti-stacking endorsement prevents two policies from applying. [Doc. 18 at 16]. However, the "other insurance" section is unambiguous. It provides that, "*If* other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows." [Doc. 1-10 at 2 (emphasis added)]. To determine whether other valid and collectible insurance is available, the section does not limit the reader consulting other policy provisions.

The anti-stacking endorsement is similarly clear and unambiguous. It states that it only applies when an occurrence or offense is also covered by "any other coverage form or policy

8

issued to you by [FFCIC] or any of our affiliates." [Doc. 16-1 at 1]. That is the case here. The anti-stacking endorsement precludes the application of the "other insurance" provisions when multiple forms or policies issued by FFCIC or its affiliates apply. Otherwise, the "other insurance" provisions dictate how payment is apportioned between the Commercial Policy and the other applicable insurance. The endorsement then states that the total limit of the insurer's liability shall be "the single highest applicable limit of liability of one of the policies which cover the occurrence or offense." [*Id.*]. Here, too, the meaning is clear and unambiguous: if an occurrence is covered by two policies issued by FFCIC or its affiliates, the total liability shall not exceed the highest individual policy limit.

The anti-stacking endorsement does not conflict with the other policy provisions. The "other insurance" provision is clear in only applying when there is other "valid and collectible insurance." [Doc. 1-10 at 2]. The anti-stacking endorsement is equally clear that the insured cannot collect under additional policies provided by FFCIC or its affiliates in such a situation. West Virginia law requires that unambiguous policy provisions be given their plain meaning. *See Westfield Ins. Co. v. Matulis*, 421 F. Supp. 3d 331, 339 (S.D. W. Va. 2019) (citing *Christopher v. U.S. Life Ins. Co. in City of New York*, 145 W. Va. 707, 707, 116 S.E.2d 864, 864 (1960)). The plain meaning of the anti-stacking endorsement, read together with other policy provisions, demonstrates that Defendants are not entitled to additional recovery beyond the single highest applicable limit of the SFP policy.

The second question is whether the anti-stacking endorsement violates any applicable statute, regulation, or public policy. First, underinsured motorist coverage precedent in no way bears on the questions here involved. As both parties observe, the commercial liability context is materially distinct from its underinsured motorist counterpart. [*See* Docs. 28 at 7–8

9

(Plaintiff noting liability insurance is subject to different rules than underinsured motorist insurance), 20 at 7–8 (Defendants saying underinsured motorist stacking cases do not apply here)]. For example, the public policy imperatives arising in underinsured motorist cases emanate from the motor vehicle coverage statutes there relevant. *See State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 565, 396 S.E.2d 737, 746 (1990) (noting the distinction between liability insurance anti-stacking language and underinsured motorist coverage anti-stacking language and referencing W. Va. Code § 33–6–31(b)).

In contrast, a settled principle in the liability insurance scheme is that anti-stacking language "does not violate any applicable insurance statute or regulation." *Payne v. Weston*, 195 W. Va. 502, 508, 466 S.E.2d 161, 167 (1995) (quoting *Youler*, 183 W. Va. at 565, 396 S.E.2d at 746). Defendants attempt to sidestep this general observation with the corollary that an insurance contract which will never result in coverage must be void for public policy unless bound for free. [Doc. 20 at 15].

While that isolated principle is correct, it does not result in additional coverage here. The Commercial Policy provides benefits sufficient to justify a premium paid. First, the purpose of insurance is to provide peace of mind, not financial gain. *See Miller v. Fluharty*, 201 W. Va. 685, 694, 500 S.E.2d 310, 319 (1997) ("[A] policyholder buys an insurance contract for peace of mind and security, not financial gain."). The mere fact that both policies do not provide recovery does not void the Commercial Policy. The SFP Policy and Commercial Policy provide somewhat similar--but ultimately distinct--insurance. Although both policies cover three identical properties, including the subject property, the SFP and Commercial Policy cover an additional two and four unique properties, respectively. [*See* Doc. 28 at 6]. Furthermore, the SFP has a $2 million aggregate limit. [*Id.*]. Once exhausted, the insured would yet be able to recover under the

Commercial Policy.

Simply put, the fact that the Commercial Policy provides no additional recovery in this specific instance does not mean that the Commercial Policy is worthless. Inasmuch as the Commercial Policy provides a slightly different umbrella of coverage--and provides recovery once the SFP Policy is exhausted--it negates the public-policy exception urged by Defendants.

The anti-stacking endorsement is valid, unambiguous, and effective under West Virginia law. Additionally, the anti-stacking endorsement is not invalidated by any statute, regulation, or public policy. Accordingly, Defendants cannot recover any sum beyond the $1 million per occurrence limit.

## III.

Based on the foregoing discussion, the Court **ORDERS** as follows respecting this matter:

1. That Plaintiff's Motion for Summary Judgment **[Doc. 15]** is **GRANTED**;

2. That Defendants' Motion for Summary Judgment **[Doc. 17]** is **DENIED**; and

3. That this action is **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:   March 3, 2021

Frank W. Volk
United States District Judge